THE BOARD OF EDUCATION OF DISTRICT NO. 68, Plaintiff-Appellee, *v.* GREEN VALLEY BUILDERS, INC., Defendant-Appellant.

Second District (2nd Division)  No. 75-65

Opinion filed July 30, 1976.

Richard B. Kuseski, of Wasneski, Yastrow, Kuseski & Flanigan, of Waukegan, for appellant.

Eva Schwartzman, of Libertyville, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Lake County, Illinois, entered on a jury verdict for $44,000 in favor of the Board of Education of District No. 68, the plaintiff, and against Green Valley Builders, Inc., the defendant, and also from a judgment entered by the circuit court in favor of the Board and against Green Valley on Green Valley's counterclaim.

The Board brought suit in 1966 against Green Valley to recover money it claimed to be due under an agreement which required Green Valley to donate land for school facilities and to pay the Board $200 for each home constructed in Cooper's Countryside Manor, a subdivision being developed by Green Valley. A counterclaim was filed by Green Valley, seeking a reconveyance of land it had donated, or a judgment for its value, on the basis that it had been donated in order to satisfy the requirements of an ordinance of the Village of Libertyville which was invalid. The case came to this court previously, following entry of an order which granted a motion of Green Valley for summary judgment. We refer to our earlier opinion (10 Ill. App. 3d 235) for a description of the allegations of the Board's complaint, wherein it claimed to have accepted the proposal Green Valley had made by holding a referendum and providing bus service; the three letters which were attached to the complaint to show the terms of Green Valley's offer; the answer of Green Valley, alleging that the letters represented just negotiations and that there was no acceptance of any offer; and minutes of a meeting of the Board held after receipt of the first of the three letters, intended to establish that there was no acceptance of an offer at that time.

In reversing the order for summary judgment we said: "It is entirely possible that the evidence will show that the referendum and bus service furnished by the Board had nothing to do with the proposals made by the defendant and that the three letters do not refer to a single agreement between the parties but are three separate efforts by the defendant to effectuate an agreement that never succeeded. However, it is clear from an examination of the record that a material dispute as to these factual issues exists. Accordingly, it was improper for the trial court to render judgment before the parties could submit evidence in regard to those issues and the order must be reversed and the cause remanded for further proceedings." (10 Ill. App. 3d 235, 239.) We must now consider whether, in the ensuing trial on the merits, the Board offered sufficient evidence to allow a jury to find an offer, an acceptance by performance, and a unilateral contract as claimed.

■■ We believe it cannot be doubted that the proposals outlined in the first of the three letters, dated October 15, 1958, constituted an offer. Written by Green Valley's attorney, it said "my client offers," and concluded by referring to the "generous offer" the client had made. Moreover, the second letter, dated April 1, 1959, spoke of the making of "certain promises which we are prepared to abide by," and used the expressions "we offered" and "our offer." Again, the letter of December 1, 1959, spoke of "certain promises," "previous offer," and "our offer." In our earlier opinion we indicated that we thought an offer had been made and apparently not rejected, when we said (10 Ill. App. 3d 235, 239), with reference to the meeting of the Board which followed receipt of the first letter: "Although the minutes clearly do not indicate that the Board accepted any offer from Green Valley or its president, neither do they unequivocally indicate that they rejected the proposal."

■■■ It appears to us, further, that although the Board's minutes do not show an acceptance by a promise creating a bilateral contract, yet the jury was shown evidence of acceptance by performance, creating a unilateral contract. *(Weather-Gard Industries, Inc., v. Fairfield Savings & Loan Association*, 110 Ill. App. 2d 13, 20.) Admitted into evidence were minutes of meetings of the Board held February 11, 1957, and December 18, 1957, when requests for bus service were made by residents of the school district. On each of those occasions the requests were refused. The minutes of the earlier of those meetings explained: "A bus was not feasible at the present time." The first of the three letters written on behalf of Green Valley, which was dated October 15, 1958, was presented at the meeting of the Board held November 12, 1958. At that same meeting the matter of bus service came under discussion again, and this time the minutes reported: "Following a discussion about the school bus problem the Board agreed to invite the committee who got up a petition about a school bus to meet with the Board and get more facts as to the costs and other questions involved." Within four months after receipt of the letter of October 15, 1958, a bus referendum had been held and bus service was being provided for the district. In the trial of this case the jury inquired: "Does it matter whether the School Board accepted the contract through an action accidentally or deliberately?" The court answered: "The School Board by their action must have intended to accept the offer, if any." The jury must therefore have concluded that the referendum and the bus service were intended to constitute an acceptance of Green Valley's offer and were not a mere coincidence. Even where the facts are admitted or undisputed but a difference of opinion as to the inference that may be legitimately drawn from them exists, it is primarily for the jury to draw the inference. *(La Salle National Bank v. Wieboldt Stores, Inc.*, 60 Ill. App. 2d 188, 205-06.) It was not necessary for the inferred intent to have

been spelled out in the Board's minutes, because section 10—7 of The School Code (Ill. Rev. Stat. 1975, ch. 122, par. 10—7) requires that a record be kept of a board's "official acts" but not necessarily the purposes intended to be accomplished by such acts. We believe the jury's inference from the facts and circumstances should not be disturbed.

■■ The proposal contained in the letter of October 15, 1958, did not provide for both a gift of land for a school and a gift of money for transportation. Money was to be given for transportation only if the Board refused or declined to accept the gift of land for a school. The Board had a choice to make between building a school and providing bus service, and it chose the latter. Although there were no recitals in the minutes that the Board refused or declined to accept the offer of land on the terms set forth in the letter of October 19, 1958, before it proceeded to call a referendum and to provide bus service, we think the jury could reasonably have inferred that the Board's provision of transportation was its election to accept the offer of money.

■■ The second letter written on behalf of Green Valley, dated April 1, 1959, said that it had made certain promises, including the dedication of land for school or park purposes and the donation of money to the School Board, in consideration of the rezoning of its land by the County of Lake and in consideration of the approval and acceptance of certain subdivision plats. The letter went on to say: "In further discussion with the school board officials, we were impressed with the financial burden that new houses added to the school district and we, therefore, agreed to increase our donation to Two Hundred Dollars ($200.00) per house, in order to gain the approval and support of the School Board." Inasmuch as the letter relates the $200 per house figure to the financial burden imposed by new houses on the school district, we believe Green Valley cannot now argue that the conditions imposed under the Libertyville subdivision ordinance were not "designed to alleviate a school problem specifically and uniquely attributable to defendant's activity." *(Board of Education v. Surety Developers, Inc.,* 63 Ill. 2d 193, 203.) Therefore, in the absence of any reason to hold the subdivision ordinance invalid, it makes no difference that Green Valley's offers may have been made to satisfy the requirements of the Village. (63 Ill. 2d 193, 205.) Furthermore, our court has stated: "There is no known law or public policy that makes it illegal for boards of education and developers to enter into contracts that help defray the cost of constructing educational facilities. On the contrary, the law is clear that this type of agreement is enforceable even in the face of an invalid ordinance, if the agreement was the voluntary act of the parties." *Board of Education v. Surety Developers, Inc.,* 24 Ill. App. 3d 638, 645, *aff'd,* 63 Ill. 2d 193.

■■ The third of the letters, dated December 29, 1959, mentioned that

one of the conditions attached to its offer of funds "was that free bus service be provided to the children in the Subdivision," and stated: "It is our understanding that this condition is to be complied with due to a referendum vote approving School Bus Service in the District." It went on to say: "Certain other conditions were also provided for. We are hereby withdrawing all of these other conditions and shall make payments to the School, free and clear of any and all conditions, to be used by the School for whatever purposes that the School deems proper and necessary to carry on School functions." We believe, again, that the jury could reasonably have deduced from this that the Board did not have to decline Green Valley's offer of land in order to be entitled to Green Valley's money. Prospective purchasers of home sites were given a brochure stating that both land and money had been promised to the Board. Various persons testified that they had been told about the donations of money and land. From all of this we believe the jury could fairly have concluded that the promise of money had ceased to be conditioned on rejecting the land, and that the three letters referred to a single agreement between the parties which provided, in its final form, for a gift of both money and land to the Board in exchange for the Board's making provision for transportation.

■■ Green Valley argues that the trial court erred in failing to direct a verdict in its favor at the close of the plaintiff's case and at the close of all the evidence in the trial. Its argument emphasizes the failure of the Board's minutes to show that by its actions the Board intended to accept an offer and create a binding agreement. We have indicated that in our view the jury was not restricted to the minutes in drawing its inferences. Moreover, Green Valley having got its free bus service, its rezoning, and acceptance of its subdivision plats, as the letter of December 29, 1959, shows, and also having got the benefit of publicizing in its sales program the contributions it was going to make to the school, we believe Green Valley should not now be permitted to renege on its agreement. *Board of Education v. E. A. Herzog Construction Co.*, 29 Ill. App. 2d 138, 142.

■■ Green Valley argues also that the trial court erred in refusing to give certain instructions Green Valley had tendered. The refused instructions dealt in part with the kind of evidence of acceptance needed to establish the existence of a bilateral contract, rather than a unilateral contract. Otherwise they were adequately matched, we believe, by the instructions which were given.

■■ Green Valley maintains that it was error for the trial court to deny it a hearing on its counterclaim, when it could have presented evidence that the dedication of land was made pursuant to the requests and requirements of the Village to satisfy an illegal and void ordinance. It

appears to us, however, that all the issues raised by the counterclaim were resolved against Green Valley in the trial on the complaint.

For the reasons stated, the judgments of the Circuit Court of Lake County are affirmed.

Judgment affirmed.

RECHENMACHER, P. J., and GUILD, J., concur.